TRUE, APPELLANT, *v.* CURRENS ET AL.; PROGRESSIVE CASUALTY INSURANCE CO., APPELLEE.

(No. C-840967—Decided November 27, 1985.)

*Simon & Namanworth Co., L.P.A.,* and *Steven E. Simon,* for appellant.

*McIntosh, McIntosh & Knabe* and *Bruce B. McIntosh,* for appellee.

BLACK, P.J. The question in this appeal is whether under Ohio's Financial Responsibility Act, R.C. 4509.01 *et seq.,* the issuer of a financial responsibility bond may exclude from coverage the payment of a judgment arising out of the operation by someone other than the principal of a motor vehicle owned by the principal. We hold that while it is the obligation of the motorist to obtain the full coverage or other proof of financial responsibility required by the Act, the statute does not require a surety issuing a financial responsibility bond to cover all risks for which the principal may be liable.

Appellee Progressive Casualty Insurance Company issued a financial responsibility bond to defendant Jeff McNulty. Under the provisions of the bond, Progressive was obligated as surety for the payment of judgments against McNulty "on account of *his and only his personal* operation of a motor vehicle" (emphasis added). The bond made reference to the Financial Responsibility Act as follows:

"It is expressly agreed that this bond is given to comply with the provisions of. the Motor Vehicle Safety Responsibility Act. Section 4509.1 [*sic*] to 4509.73, Revised Code of Ohio, and nothing herein contained shall be construed to extend the liability of the Surety under the provisions of said Act."

On April 8, 1981, McNulty allowed defendant Candy A. Currens to drive a Ford van that he owned. While Currens was driving, the van struck a parked automobile that belonged to plaintiff-appellant Michael True, causing damage to True's automobile in the amount of $765.99. On October 26, 1982, True obtained a default judgment against McNulty for that amount plus court costs. On September 16, 1983, a consent judgment for the same amount was entered in True's favor against Currens. The latter judgment entry stated that it

established Currens' liability for the damages suffered by True.

In the interim between the two judgments, on November 17, 1982, True filed a supplemental complaint against Progressive demanding payment of the unsatisfied judgment against McNulty. True asserted that Progressive was obligated under the bond "to pay all sums on behalf of Defendant Jeff McNulty for which he might become legally liable arising out of the operation or ownership of his motor vehicle." True later filed a motion for summary judgment, alleging that he was entitled to judgment against Progressive as a matter of law. He reasoned that the proof of financial responsibility required of motorists by R.C. 4509.44[1] and 4509.45[2] was defined as "proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, *arising out of the ownership, maintenance, or use of a motor vehicle * * *."* (Emphasis added.) R.C. 4509.01(K). Therefore, he asserted, in order for the bond to comply with the Act, as it purported to do, it would have to cover any damages connected to the principal's ownership of a motor vehicle, even if the damages resulted from someone else's operation of the vehicle, despite the express terms of the instrument limiting coverage to the principal's personal operation of a motor vehicle.

The trial court overruled True's motion for summary judgment and entered judgment in favor of Progressive,[3] finding as a matter of fact that the bond covered only McNulty's personal operation of a motor vehicle and concluding as a matter of law that Progressive was not obligated under the bond to pay the judgment against McNulty for his negligent entrustment of his van to Currens. We are not disposed to disturb either the trial court's findings of fact or its conclusions of law.

The pivotal issue we are called upon to address is whether the Financial Responsibility Act, R.C. 4509.01 *et seq.*, requires, as appellant asserts it does, that a financial responsibility bond cover without exclusion any action relating to the principal's ownership, maintenance or use of a motor vehicle. This interpretation misconstrues the focus of the Act. The provisions of the Act are directed primarily toward motorists and

---

[1] R.C. 4509.44 provides:

"No motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such proof is furnished and maintained in accordance with section 4509.45 of the Revised Code."

[2] R.C. 4509.45 provides:

"Proof of financial responsibility when required under section 4507.41, 4509.32, 4509.33, 4509.34, 4509.38, 4509.40, 4509.42, or 4509.44 of the Revised Code may be given by filing any of the following:

"(A) A certificate of insurance as provided in section 4509.46 or 4509.47 of the Revised Code;

"(B) A bond as provided in section 4509.59 of the Revised Code;

"(C) A certificate of deposit of money or securities as provided in section 4509.62 of the Revised Code;

"(D) A certificate of self-insurance, as provided in section 4509.72 of the Revised Code, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to the self-insurer.

"Such proof shall be filed and maintained for three years from the date of suspension of operating privileges by the registrar of motor vehicles."

[3] The parties and the court had agreed on June 1, 1984, by way of stipulation that, if the court overruled True's motion for summary judgment, it would enter judgment in favor of Progressive.

only secondarily toward insurers and sureties. The Ohio Supreme Court has noted that "[t]he goal of the Ohio Financial Responsibility Act is to promote safety and to provide a strong incentive for motorists to *make themselves* financially responsible." *Toledo* v. *Bernoir* (1969), 18 Ohio St. 2d 94, 100 [47 O.O.2d 241]. (Emphasis added.) Stated another way, the Act is intended to prevent an individual from becoming a motorist or from owning a motor vehicle unless he or she is able to be financially responsible for the consequences.

An owner of a motor vehicle may prove the requisite financial responsibility by filing any of four documents: (1) a certificate of insurance, (2) a bond, (3) a certificate that the motorist has deposited thirty thousand dollars in money or securities with the Treasurer of state or (4) a certificate of self-insurance. R.C. 4509.45; R.C. 4509.62. A financial responsibility bond may be issued by either an authorized surety company or by two individual sureties whose combined real estate holdings within the state equal twice the amount of the bond. R.C. 4509.59. A bond issued by individual sureties and duly filed with the Registrar of Motor Vehicles constitutes a lien on the sureties' real estate in favor of any holder of a judgment against the principal for personal injury or property damage "resulting from the ownership, maintenance, or use of a motor vehicle after such bond was filed * * *." R.C. 4509.60. Thus, the statute in effect prescribes the coverage required of a bond issued by individual sureties. No such prescription exists delineating the coverage required of a bond issued by a surety company. The only statutorily required conditions of such bonds relate to amount, rather than type, of coverage. R.C. 4509.20. Under the law, it is the obligation of the motorist or motor vehicle owner to ensure that he or she is covered for all possible risks related to motor vehicle accidents. See R.C. 4509.01(K). However, surety companies are not required to issue only bonds providing total coverage. An individual may purchase a bond providing limited coverage and then supplement by either the purchase of additional bonds or by any of the other methods allowed under the statute, so long as the total package evidences proof of financial responsibility for all risks.

Consequently, appellant's argument that the provisions of the bond instrument are internally inconsistent fails. Appellant contends that the bond's limitation of coverage to the bondholder's personal use of a motor vehicle cannot be read so as to conform with the bond's provision for compliance with the Financial Responsibility Act, and that, therefore, the provisions of the statute, which appellant contends mandate total coverage, must control. However, as we have just explained, the statute does not require that a single bond provide total coverage, but rather it requires that an individual motorist or motor vehicle owner be responsible for all risks. All that is required in order for the bond to comply with the statute is that the amounts of coverage for various types of damage conform to the minima established in R.C. 4509.20 and that the surety company be authorized to transact business in Ohio. R.C. 4509.59. The bond issued to McNulty met the amount requirements, and there has been no allegation that Progressive was not authorized to operate in this state. Therefore, the bond complied with the Financial Responsibility Act even though its coverage was insufficient to demonstrate McNulty's complete financial accountability.

Nevertheless, appellant argues that to construe the statute as permitting bond companies to limit coverage contravenes the legislative purpose of protecting the motoring public. In support of this assertion, he cites cases stating

that financial responsibility bonds are intended to protect the public and not the principal. See *Suver* v. *Personal Service Ins. Co.* (1984), 11 Ohio St. 3d 6, 7 ("[A] financial responsibility bond does not protect the principal by insuring him against liability. Instead, it is written for the protection of the motoring public who may be injured by the principal."); *Republic-Franklin Ins. Co.* v. *Progressive Cas. Ins. Co.* (1976), 45 Ohio St. 2d 93, 95 [74 O.O.2d 202] (same). See, also, *Thornton* v. *Personal Service Ins. Co.* (1976), 48 Ohio St. 2d 306, 310 [2 O.O.3d 447] ("[T]he underlying purpose of a financial responsibility bond is to protect the public and not to save harmless the principal * * *."), certiorari denied (1977), 431 U.S. 939. However, these judicial pronouncements were made in the context of pointing out the difference between an insurance policy and a financial responsibility bond. What the court was explaining in each of these cases is that, while an insurance policy protects the insured against liability, a financial responsibility bond ensures payment to the injured party, but the surety may then recover the amount paid from the principal. The court was not asserting that the surety must pay any party injured by the principal regardless of the terms of the bond.[4]

We hold that a surety may limit the coverage of a financial responsibility bond to the principal's personal operation of a motor vehicle. The bond issued by Progressive to McNulty was so limited, and thus the trial court did not err in concluding that the bond did not provide for payment of a judgment against McNulty that did not arise out of his personal operation of a motor vehicle

and in entering judgment for Progressive.

We affirm the judgment of the trial court.

*Judgment affirmed.*

KLUSMEIER and HILDEBRANDT, JJ., concur.

---

[4] In this case, we are not faced with the question of the permissibility of any exclusions or limitations in the coverage furnished by automobile insurance policies, and we make no decision regarding any such issues.