OPINION
{¶ 1} Plaintiff-appellant Theresa E. McKean appeals from the January 9, 2004, Judgment Entry of the Stark County Court of Common Pleas which granted defendantappellee Omni Hartford Insurance Group's motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 3, 1999, Theresa E. McKean [hereinafter appellant] was injured in a motor vehicle collision between two vehicles. Appellant was driving one of the vehicles and Thomas L. Howell was driving the other vehicle. Howell was negligent and his negligence was the proximate cause of the collision. Appellant was injured in the collision.
 {¶ 3} Howell had an automobile liability insurance policy issued by OMNI Hartford Insurance Group [hereinafter OMNI] which was in effect at the time of the accident. According to appellant, appellant's counsel pursued a claim with OMNI and subsequently made several efforts to communicate with OMNI to resolve appellant's claim.
 {¶ 4} On November 2, 2001, appellant filed a complaint against Howell in the Stark County Court of Common Pleas. According to appellant, a copy of the complaint was mailed to OMNI but OMNI again failed to respond.
 {¶ 5} Howell failed to answer the complaint and, apparently, failed to send a copy of the complaint to OMNI. On December 11, 2001, the trial court notified appellant's counsel that no answer had been filed on behalf of Howell. Thereafter, on January 2, 2002, the motion for default judgment was filed and, according to appellant, a copy was mailed to OMNI. According to OMNI, Howell failed to send a copy of the motion to OMNI. A hearing on appellant's motion for default was set for January 25, 2002. Appellant asserts that on January 2, 2002, appellant faxed another copy of the complaint and a copy of the motion for default judgment, including notice of the hearing time and date, to OMNI. OMNI failed to appear at the hearing. A default judgment against Howell was entered on January 30, 2002.
 {¶ 6} Howell subsequently filed a motion to vacate the default judgment. The motion was denied. Howell then filed an appeal to this Court and the trial court's ruling was affirmed.[1]
 {¶ 7} After confirming that Howell was insolvent, appellant filed a motion to amend the complaint to assert a claim against OMNI. Both appellant and OMNI filed motions for summary judgment. In its motion for summary judgment, OMNI argued that Howell is not entitled to coverage under the OMNI policy because Howell violated the terms of his OMNI policy when he did not notify OMNI of the legal action filed against Howell and did not send copies of any legal notices or legal papers to OMNI in regard to the accident. On January 9, 2004, the trial court granted OMNI's motion for summary judgment and denied appellant's motion for summary judgment. In so doing, the trial court concluded that Howell's failure to give notice of the lawsuit to OMNI breached the terms of the OMNI policy and precluded coverage.
 {¶ 8} It is from this grant of summary judgment that appellant appeals, raising the following assignments of error:
 {¶ 9} "I. The trial court erred in granting appellee/insurer's motion for summary judgment. A determination as to whether an insurer has received proper notice of a claim and a determination as to whether the insurer has been prejudiced by lack of notice are to be made by the trier of fact and are not proper for summary judgment.
 {¶ 10} "II. The trial court committed reversible error by failing to find that appellee was prejudiced by any lack of notice by its insured.
 {¶ 11} "III. The trial court committed reversible error by interpreting the notice provision in the insurance contract too narrowly."
 {¶ 12} Summary judgment proceedings present an appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civil Rule 56(C) states the following, in pertinent part:
 {¶ 13} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 14} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed.Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (citingDresher v. Burt (1966), 75 Ohio St.3d 280, 662 N.E.2d 264).
 {¶ 15} It is based upon this standard that we review appellant's assignments of error.
 I II {¶ 16} In the first assignment of error, appellant argues that the trial court erred in granting summary judgment because a summary judgment cannot be granted in favor of an insurer based on lack of notice of a claim absent a finding of breach and prejudice and because the determination of those issues is for the trier of fact and not appropriate for summary judgment. (Citing Ferrando v. Auto-Owner's Mut.Ins. Co. (2002), 98 Ohio St.3d 186, 781 N.E.2d 927 and Shirley v.Republic — Franklin Ins. Co., Stark App. 2002CA222, 2003-Ohio-5369). In the second assignment of error, appellant contends that the trial court committed reversible error by failing to find that OMNI was prejudiced by any lack of notice from its insured. This court shall consider these assignments of error together.
 {¶ 17} The OMNI policy contains the following notice provision:
 {¶ 18} "Part E — Duties after an Accident or loss
 {¶ 19} "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
 {¶ 20} "A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
 {¶ 21} "B. A person seeking any coverage must:
 {¶ 22} "1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
 {¶ 23} "2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
 {¶ 24} "3. Submit, as often as we reasonably require:
 {¶ 25} "a. To physical exams by physicians we select. We will pay for these exams.
 {¶ 26} "b. To examination under oath and subscribe the same.
 {¶ 27} "4. Authorize us to obtain:
 {¶ 28} "a. Medical reports; and
 {¶ 29} "b. Other pertinent records.
 {¶ 30} "5. Submit a proof of loss when required by us." Howell's Omni Personal Auto Policy at Part E, Page 20 of 36, (emphasis omitted).
 {¶ 31} There appears to be no dispute that Howell never notified OMNI of the lawsuit filed against him by appellant. In its motion for summary judgment, OMNI argued that Howell is not entitled to coverage under the OMNI policy because Howell violated the terms of his OMNI policy when Howell did not notify OMNI of the legal action filed against him and did not send copies of any legal notices or legal papers to OMNI in regard to the accident.
 {¶ 32} The trial court held as follows:
 {¶ 33} "The Court finds that regardless of the fact that Defendant Omni may have been made aware of the pending suit by Plaintiff, there is no evidence that Defendant Howell, himself, pursuant to the terms of the Omni policy, notified Defendant Omni of Plaintiff's suit being filed against him. Additionally, there is no evidence on the Court's docket that Defendant Omni was served with a copy of Plaintiff's Complaint prior to default judgment being entered against Defendant Howell. Therefore, the Court finds that Defendant Howell breached his obligation under the policy by not notifying Defendant Omni of the Plaintiff's suit being filed against him. The lack of notice of suit constitutes breach of the insured's obligation under a policy of insurance, and as such, the insurer's duty to defend is not invoked. Redhead Brass v. Buckeye Ins.
(1999), 135 Ohio App.3d 616, 631, 735 N.E.2d 48.
 {¶ 34} "Accordingly, the Court finds that Defendant Onmi is not entitled to provide coverage to Defendant Howell. Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for same is denied."
 {¶ 35} In both of the assignments of error, appellant, in essence, argues that the trial court erred by failing to apply Ferrando. We agree.
 {¶ 36} In Ferrando, the Ohio Supreme Court held as follows:
 {¶ 37} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Id. at para. One of syllabus.
 {¶ 38} Thus, the Ferrando court created a two-step analysis to be applied in underinsured motorist coverage cases. First, the trial court must determine if a breach occurred because the insurer did not receive prompt notice within a reasonable time. Id. at ¶ 90. Whether notice is reasonable is dependent upon all the surrounding facts and circumstances of each case. Id.; Ruby v. Midwestern Indemn. Co. (1988),40 Ohio St.3d 159, 532 N.E.2d 730, at the syllabus. Second, if a breach of the prompt-notice provision has occurred, the court must determine if the insurer was prejudiced such that coverage must be forfeited.Ferrando, supra, at ¶ 89. In deciding the issue of prejudice to the insurer, a presumption arises that an unreasonable delay was prejudicial; however, the insured may rebut the presumption with contrary evidence. Id. at ¶ 90.
 {¶ 39} Although Ferrando concerned underinsured motorist coverage (UIM) and has been extended to uninsured motorist coverage policies (UM), we find that it is also applicable to liability coverage cases. InFerrando, the Court provided an overview of case law dealing with breaches of insurance policy provisions from other states as well as related cases decided by the Ohio Supreme Court.[2] In so doing, the Court stated that "[a] minority of states — those that follow the "traditional approach" — find all breaches to be material, with the result being that in those states a breach of a policy provision (such as a prompt-notice clause) by an insured seeking UIM coverage automatically relieves the UIM insurer of the obligation to provide coverage. States that follow the majority view, on the other hand, now have abandoned this traditional approach in favor of a modern trend that finds that a breach is material, so as to preclude coverage, only when the insurer is prejudiced by the breach." Ferrando v. Auto-Owners Mut. Ins. Co.,98 Ohio St.3d at 191. (emphasis added).
 {¶ 40} The Ferrando Court subsequently cited with approval the case ofOrmet Primary Aluminum Corp. v. Employers Ins. of Wausau (2000),88 Ohio St.3d 292, 725 N.E.2d 646. Ormet concerned the timeliness of notice to an insurer by an insured aluminum manufacturer who was seeking coverage for groundwater contamination. Ormet was not an uninsured/underinsured motorist coverage case but, rather, concerned liability coverage. Specifically, in citing Ormet, the Ferrando Court stated the following:
 {¶ 41} "In a case that did not involve motor vehicle insurance coverage, Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau
(2000), 88 Ohio St.3d 292, 302-303, 725 N.E.2d 646, this court explained the general reasons underlying notice provisions:
 {¶ 42} "`Notice provisions in insurance contracts serve many purposes. Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. Ruby v. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, 161,532 N.E.2d 730, 732. In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims. Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims. (Citations omitted.)
 {¶ 43} "This court in Ruby, 40 Ohio St.3d at 161, 532 N.E.2d 730, stated, "Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary." Furthermore, in Ormet, this court determined that the untimely notice of an environmental claim by the insured party prejudiced the insurers under the facts of that case. Id. at 305, 725 N.E.2d 646. By inquiring into prejudice to the insurer in that case, instead of finding that the unreasonably late notice in and of itself caused a forfeiture of the coverage, this court indicated that Ohio does not follow the traditional rule in late-notice cases but follows the modern trend of inquiring into prejudice. Although Ormet was not a UIM case and did not involve motor vehicle insurance, its core reasoning is applicable here." Ferrando v.Auto-Owners Mut. Ins. Co., 98 Ohio St.3d at 204-205.
 {¶ 44} Appellee raises an argument that this case is distinguishable from Ferrando because Ferrando concerned late notice where as in this case Howell gave no notice of the suit filed by appellant. This failure to provide any notice can be viewed as a failure to seek coverage under the policy. When this Court reviews the decision of the trial court, it appears this failure to seek coverage by failing to give notice of the lawsuit may have been dispositive to the trial court. While this Court has concerns that Howell and OMNI were the contracting parties to the policy and Howell provided no notice of the suit to OMNI, thereby presumably not seeking coverage of the claim, for the following reasons we find Howell's inaction does not per se preclude coverage.
 {¶ 45} First, in Ohio, an injured person may sue a tortfeasor's liability insurer after obtaining judgment against an insured. R.C.3929.06; Chitlik v. Allstate Ins. Co. (1973), 34 Ohio App.2d 193, 198,299 N.E.2d 295. Such an injured person, sometimes referred to as the injured creditor, need not be a party to the insurance policy in order to sue the insurer for benefits pursuant to the tortfeasor's policy. As OMNI implicitly concedes in its brief, in such an action, an injured creditor may collect to the extent to which the insured is entitled to under the policy. OMNI's Brief, pg. 7 (citing R.C. 3929.06 and Transamerica Ins.Co. v. Taylor (1986), 28 Ohio St.3d 312, 504 N.E.2d 15 (overruled on other grounds by Preferred Risk Ins. Co. v. Gill, 30 Ohio St.3d 108,507 N.E.2d 1118) and Sanderson v. Ohio Edison Co. 69 Ohio St.3d 582,1994-Ohio-379, 635 N.E.2d 19).
 {¶ 46} Second, Ohio has enacted the Financial Responsibility Act, R.C. 4509.01 et seq. The purpose of the Financial Responsibility Act is to "minimize those situations in which persons are not compensated for injuries and damages sustained in motor vehicle accidents." R.C.4509.101(J). The Act requires that the owner of a motor vehicle obtain coverage or other proof of financial responsibility to cover damages related to the ownership, maintenance or use of a motor vehicle. True v.Currens (1985), 27 Ohio App.3d 160, 163, 499 N.E. 1287. Each owner of a motor vehicle must obtain coverage or other proof of financial responsibility in the amount of "twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident." R.C. 4509.01(K).
 {¶ 47} Thus, the purpose of this act is to protect injured persons such as appellant. Howell's policy with OMNI provided the minimal coverage as required by law.[3] To require drivers such as Howell to obtain such coverage and then permit Howell and OMNI to circumvent use of the coverage to compensate an injured person would eviscerate the Act. In fact, at the time this issue was decided by the trial court, R.C. 4509.53
provided that "[e]very motor-vehicle liability policy is subject to the following provisions which need not be contained therein: (A)The liability of the insurance carrier with respect to the insurance required by sections 4509.01 to 4509.78, inclusive, of the Revised Code, shall become absolute whenever injury or damage covered by the policy occurs; the policy shall not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury; no statement made by the insured or on his behalf and no violation of the policy shall defeat or void thepolicy."[4] (Emphasis added) We find that the law, at the time this case was decided, presented a clear purpose of compensating injured persons such as appellant despite the actions or inactions of an insured such as Howell.
 {¶ 48} Last, we are persuaded by the reasoning of Ferrando to view this issue as a breach to be considered pursuant to the Ferrando analysis rather than a type of breach that precludes coverage per se. TheFerrando Court cited three rationales underlying why states have shifted from the traditional approach, which finds all breaches material, to the modern approach (adopted by the majority of states) which finds a breach material so as to preclude coverage only when the insurer is prejudiced by the breach. Ferrando, 998 Ohio St.3d at 191 193-194. The first rationale cited is "the adhesive nature of insurance contracts." "[M]ost insurance contracts are form contracts drafted by the insurer, and the insurer has little, if any, bargaining power." Id. at 193. The second rationale is "the public policy objective of compensating tort victims." This rationale is clearly reflected in Ohio's Financial Responsibility Act. This interest is not served by an approach that prevents an accident victim from recovering from an insurer who was not prejudiced. Id. The third rationale that supports the modern trend is "the inequity of the insurer receiving a windfall due to a technicality." Id. at 194. As stated in Ferrando, "notice requirements are devised in order to insulate the insurer from prejudice and, thus, in the absence of prejudice the notice provisions should not be strictly enforced. Id. (quoting Alcazarv. Hayes (Tenn. 1998), 982 S.W.2d 845, 851). When these rationales are considered in the context of the case sub judice, we find that they are equally applicable in this case where Howell failed to provide notice. We find that the rationale behind Ferrando dictates that, in this case, coverage is not precluded unless Howell's failure to provide notice of the suit prejudiced OMNI.
 {¶ 49} In conclusion, we find that when all of these considerations are taken into account, Howell's failure to provide notice does not preclude recovery by appellant any more than a failure to provide timely notice would preclude coverage. Although we recognize that this case can be distinguished from Ferrando and Ormet on that basis, we do not find the difference to be dispositive under the circumstances of this case.
 {¶ 50} Accordingly, we agree that the trial court erred when it failed to apply Ferrando and Ormet. Specifically, we find that the trial court erred in granting summary judgment in favor of appellee based upon a breach of the notice provision in the policy, without considering whether appellee was prejudiced by the breach. Summary judgment could only be granted if the trial court found no genuine issue of material fact on both the issues of whether there was a breach of the notice provision and prejudice to OMNI as a result of that breach. Accordingly, appellant's second assignment of error is sustained.
 {¶ 51} In assignment of error I, appellant also contends that the question of whether a breach occurred and whether OMNI was prejudiced are issues for a trier of fact and not proper issues for summary judgment. In its appellate brief, OMNI concedes that, pursuant to Ferrando, "questions of reasonableness of notice and prejudice are factual questions for the trier of fact." Appellee's Brief, pg. 10. However, we do not reach the merits of this assignment of error at this time. We note that, under some circumstances, summary judgment may be appropriate on these issues if there simply is no genuine issue of material fact under the circumstances of a case. However, we find appellant's assignment of error to be premature at this point. Pursuant to our holding above, the trial court's grant of summary judgment must be vacated and the matter remanded for consideration pursuant to Ormet and Ferrando. Thus, because the trial court has not considered the issue of prejudice to determine if there is a genuine issue of material fact, we overrule appellant's first assignment of error as premature.
 III {¶ 52} In the third assignment of error, appellant argues that the trial court interpreted the notice provision of Howell's insurance contract too narrowly when it found that Howell breached the terms of his policy with appellee. We disagree.
 {¶ 53} Howell's liability policy contained the following language:
 {¶ 54} "Part E — duties after an accident or loss
 {¶ 55} "We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
 {¶ 56} "A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
 {¶ 57} "B. A person seeking any coverage must:
 {¶ 58} "1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
 {¶ 59} "2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
 {¶ 60} "3. Submit, as often as we reasonably require:
 {¶ 61} "a. To physical exams by physicians we select. We will pay for these exams.
 {¶ 62} "b. To examination under oath and subscribe the same.
 {¶ 63} "4. Authorize us to obtain:
 {¶ 64} "a. Medical reports; and
 {¶ 65} "b. Other pertinent records.
 {¶ 66} "5. Submit a proof of loss when required by us." Howell's Omni Personal Auto Policy at Part E, Page 20 of 36, (emphasis omitted).
 {¶ 67} The trial court found that "[r]egardless of the fact that Defendant Omni may have been made aware of the pending suit by Plaintiff, there is no evidence that Defendant Howell, himself, pursuant to the terms of the Omni policy, notified Defendant Omni of Plaintiff's suit being filed against him. Additionally, there is no evidence on the Court's docket that Defendant Omni was served with a copy of Plaintiff's Complaint prior to default judgment being entered against Defendant Howell. Therefore, the Court finds that Defendant Howell breached his obligation under the policy by not notifying Defendant Omni of the Plaintiff's suit being filed against him." January 9, 2004, Judgment Entry, pg. 3.
 {¶ 68} If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511, 628 N.E.2d 1377. Upon review of the policy, we find that the terms of the policy are clear and unambiguous and required actions by Howell. The policy states that a person seeking coverage, who is Howell in this circumstance, must send copies of any notices or legal papers received in connection with the accident or loss. Howell failed to send any such notices or legal papers and thereby breached the terms of his policy. Thus, we find that the trial court did not interpret the language of the contract too narrowly when it found that Howell breached the terms of Howell's policy with OMNI.
 {¶ 69} Appellant's third assignment of error is overruled. However, as noted in the analysis of assignments of error I and II, the determination of whether a breach occurred does not end the determination of whether OMNI can avoid coverage. The issue of whether there is a genuine issue of material fact as to whether the breach prejudiced OMNI, and was thus a material breach, remains to be decided.
 {¶ 70} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded for further proceedings pursuant to Ferrando, supra.
Edwards, J.
Hoffman, P.J. concurs and dissents.
Farmer, J. concurs separately.
[1] McKean v. Howell, Stark App. No. 2002CA00293, 2003-Ohio-353.
[2] The Ferrando Court noted that although Ferrando required the Court "to devote special attention to those cases that considered these questions in the context of UIM coverage, other cases not involving UIM coverage also apply many of the same standards supported by the same general reasoning and are included in our analysis where appropriate."Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 191,781 N.E.2d 927.
[3] We are not addressing at this time the hypothetical situation in which an insured may have chosen to purchase more than the minimum required coverage. See R.C. 4509.55("[e]xcess or additional coverage shall be subject to sections 4509.01 to 4509.78, inclusive, of the Revised Code.")
[4] R.C. 4509.53 has been revised. The revision became effective after the trial court issued its decision in this case. The revised statute now reads as follows, in pertinent part: "(A) Subject to the terms and conditions of the policy, the liability of the insurance carrier with respect to the insurance required by sections 4509.01 to 4509.78 of the Revised Code, shall become conclusive whenever injury or damage covered by the policy occurs; the policy shall not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury; no statement made by the insured or on the insured's behalf shall defeat or void the policy."