**HELBERG, Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Appellee.**

[Cite as *Helberg v. Natl. Union Fire Ins. Co.* (1995), 102 Ohio App.3d 679.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–103.

Decided April 28, 1995.

*Richard M. Kerger* and *Amy M. Natyshak,* for appellant.

*Gregory A. Harrison,* for appellee.

*Per Curiam.*

This appeal from a summary judgment granted by the Lucas County Court of Common Pleas in favor of appellee, National Union Fire Insurance Company, is removed from the accelerated calendar and is placed on the regular calendar pursuant to 6th Dist.Loc.App.R. 12(C). Appellant, Tom Helberg, an insured of appellee, initiated litigation when appellee refused to indemnify him in a legal malpractice suit brought against him by a third party.

Appellant presents one assignment of error, which is:

"The trial court erred when it granted National Union Fire Insurance Company's motion for summary judgment and dismissed Tom Helberg's case based on the finding that Tom Helberg did not comply with the terms of the policy as to providing national union with notice of the claim."

Appellant presents two issues for consideration under this assignment. The first issue is whether the insurer must provide coverage if notice is provided within a reasonable amount of time after the insured is notified of the claim and the coverage is renewed, even if the notice given to the insurer occurred after the original policy period ended. The second issue is whether the requirement that a malpractice claim must be reported within the original policy period is against public policy.

The type of insurance policy purchased by the appellant is a "claims-made" policy. Section I of the policy, entitled "Coverage," along with Section IV of the policy, entitled "Policy Territory and Claims-made Provisions," sets forth the notice requirements. The coverage provision stated in Section I is for "any claim

* * * first made against the insured and reported to the Company during the policy period," and the notice requirement stated in Section IV of the policy is:

"The policy applies to acts or omissions occurring anywhere in the world:

"a) provided that those acts or omissions occur prior to the end of the policy period, and

"b) further provided that claim is first made against the insured within the United States of America, its territories or possession or Canada, during the policy period or extended reporting period purchased in accordance with Condition III and

"c) further provided that the claim is reported to the Company during the policy period or an extended policy period purchased in accordance with Condition III."

Appellee argues that the essential element of a "claims-made" policy is that any and all claims against the insured must be brought to the attention of the insurer during the time covered by the original policy. In the instant case, it was undisputed that appellant was aware of the claim against him on October 21, 1991, yet he did not notify National Union of the claim against him until January 21, 1992. The original claims-made policy he purchased from appellee provided coverage from December 11, 1990 to December 11, 1991. Thus, when appellant reported the claim to the company on January 21, 1992, he was making the report almost six weeks after the end of the coverage period which occurred on December 11, 1991. However, Helberg purchased a renewal of his claims-made insurance policy which ensured that he was covered by malpractice insurance at all times during this litigation and that his insurance was always with the same company.

■ In Ohio, under a claims-made policy, notice of an action against the insured must be presented to the insurer within the designated time of the policy. *United States v. A.C. Strip* (C.A.6, 1989), 868 F.2d 181; *Kaiser v. Wood* (Jan. 10, 1992), Lucas App. No. L–91–043, 1992 WL 2538, unreported. In *United States v. A.C. Strip* and *Kaiser v. Wood,* sets of circumstances occurred which are similar to those that occurred in the instant case. However, both of those cases are distinguishable. *United States v. A.C. Strip* concerns an insured who changed insurance companies between the time he became aware of the claim against him and the time he notified his insurance carrier of the claim. Thus, the first carrier denied coverage because the insured presented the claim against him after the policy had expired. Understandably, his second claims-made insurer denied coverage because the claim was made during the policy period covered by its predecessor. The first insurer denied coverage because, as here, the policy called

for claim notification during the policy period or the purchase of an extended reporting period which Strip had failed to purchase.

Similarly, *Kaiser v. Wood* (Jan. 10, 1992), Lucas App. No. L–91–043, unreported, is distinguishable. Wood, an attorney, had a claims-made malpractice insurance policy which had been cancelled for failure to pay premiums. Kaiser brought a suit alleging legal malpractice by Wood. This suit was not initiated, nor was any other notification to Wood's insurer made until after the policy was cancelled. By the language of Wood's policy, coverage was conditioned on the insurer's notification of the claim during the policy period. Since no such notification had been made prior to cancellation of the policy, this court affirmed the trial court's denial of insurance coverage. *Id.*

█ In the present case, there was no cancellation of coverage, nor did the insured change insurance carriers. The insured merely renewed his claims-made policy. Such an event should not precipitate a trap wherein claims spanning the renewal are denied. In fact, under the contract's EXCLUSION section, Section i of the contract states that the coverage applies "to any claim arising out of any acts or omissions occurring prior to the effective date of the first policy issued to the named insured by this Company and *continuously renewed thereafter* if any insured on such date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit." (Emphasis added.)

This language indicates that the parties expected the coverage to be continuous if the policy was renewed at each successive policy expiration. Taken in conjunction with section IV of the contract quoted earlier, this element of the contract contributes to the ambiguity of when a claim must be reported. Thus, the contract should be construed in favor of appellant, the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949.

█ In determining the meaning of an insurance contract, we are directed to read the contract as a whole giving meaning to every provision contained therein. *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834, paragraph six of the syllabus. The Supreme Court of Ohio has stated: "[I]f one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Id.*

The trial court cites Section IV of appellant's policy. By the terms of this section, an insured must notify the insurer of a claim during the policy period or during an extended reporting period, "purchased in accordance with Condition

III." Yet the trial court fails to give effect to the language of Condition III which defines when in the course of the business relationship extended coverage must be purchased. Condition III provides:

"III. Extended Reporting Endorsement

"*In case of cancellation or non-renewal* by either the Named Insured or the Company, the Named Insured shall have the right, upon payment within 30 days of the termination of an additional premium, to have issued an endorsement providing an unlimited extended reporting period covering claims first reported during the extended reporting period acts or omissions occurring prior to the end of the policy period and otherwise covered by the policy. The premium shall be equal to 225% of the Names Insured's last annual premium."

Clearly and unambiguously, this section sets out only two circumstances when the purchase of an extended endorsement is necessary to maintain coverage under a claims-made policy. That is when, as in *Kaiser*, a policy has been cancelled or, as in *Strip*, the policy has not been renewed by either party. Applying the time-honored maxim of construction, *expressio unius est exclusio alterius*, the inclusion of specific things implies the exclusion of those not mentioned, this court can only conclude that the inclusion of "non-renewal" of the policy as one of the those circumstances demanding the purchase of an extended reporting endorsement excludes a "renewal" as a circumstance which demands such a purchase. Since appellant's position here was a renewal rather than an a "non-renewal" or "cancellation," this court concludes that the language of the contract does not deny coverage in this context. This interpretation is also consistent with Section i of the exclusions portion of the policy, quoted earlier in the opinion, which excludes only those claims arising, "prior to the effective date of the first policy issued * * * by this Company and continuously renewed thereafter * * *." Accordingly, this court finds appellant's assignment of error well taken. The decision of the Lucas County Court of Common Pleas is reversed, and this cause is remanded for proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

ABOOD, P.J., HANDWORK and SHERCK, JJ., concur.