OPINION
Defendant-appellant/cross-appellee, Ohio Medical Transportation, Inc., d/b/a MedFlight ("MedFlight"), appeals from a judgment of the Franklin County Court of Common Pleas denying MedFlight's motion for summary judgment and granting the summary judgment motion of defendant-appellee/cross-appellant, Coregis Insurance Company ("Coregis"). Because the trial court properly granted Coregis summary judgment, we affirm.
MedFlight purchased a "claims-made" insurance policy from Coregis on April 3, 1996. Although the policy expired on April 3, 1997, MedFlight renewed the policy on a yearly basis through April 3, 1999. In March 1997, MedFlight received a copy of a letter sent to The Ohio State University Hospitals and Riverside Methodist Hospital from David S. Kessler, an attorney. Kessler stated his office represented Nancy Asp, a former MedFlight employee, who left MedFlight shortly after she was denied a promotion for which she had applied. The letter concluded that sex discrimination may have been the reason Asp was denied the promotion, and it sought resolution of the matter short of litigation. MedFlight did not inform Coregis of the letter.
On July 25, 1997, Asp filed a complaint against MedFlight in the Franklin County Court of Common Pleas alleging, inter alia, sex discrimination. MedFlight was served with the complaint on July 31, 1997; on August 5, 1997, MedFlight sent a copy of the complaint to Coregis. Pursuant to the terms of MedFlight's claims-made policy, Coregis began preparing a defense to the complaint. At some point shortly before trial was to begin, Coregis learned of the Kessler letter and refused to defend the complaint, asserting MedFlight failed to abide by the terms of its claims-made policy with Coregis. The trial court agreed and granted Coregis' motion for summary judgment. MedFlight appeals, assigning the following errors:
 I. THE TRIAL COURT ERRED IN SUSTAINING COREGIS' MOTION FOR SUMMARY JUDGMENT BECAUSE PURSUANT TO THE UNAMBIGUOUS CONTRACT LANGUAGE OF CONTINUOUSLY RENEWED COREGIS POLICY NO. NPN-452000, COREGIS RECEIVED TIMELY NOTICE OF THE COMPLAINT IN THIS CASE WHICH WAS SERVED ON THIRD-PARTY PLAINTIFF ON OR ABOUT JULY 31, 1997, AND FORWARDED TO THIRD-PARTY DEFENDANT COREGIS FIVE DAYS LATER ON OR ABOUT AUGUST 5, 1997.
 II. THE TRIAL COURT ERRED WHEN IT OVERRULED THIRD-PARTY PLAINTIFF MEDFLIGHT'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT CONTINUOUSLY RENEWED COREGIS POLICY NO. NPN-452000 CONTINUOUSLY IN EFFECT FROM APRIL 3, 1995 TO APRIL 3, 1999, PROVIDES CONTINUOUS INSURANCE COVERAGE FOR A COMPLAINT THAT WAS FILED ON JULY 25, 1997, SERVED ON OR ABOUT JULY 31, 1997, AND WAS PROVIDED TO COREGIS APPROXIMATELY FIVE DAYS [sic] ON OR ABOUT AUGUST 5, 1997.
 III. THE TRIAL COURT ERRED WHEN IT SUSTAINED COREGIS' MOTION FOR SUMMARY JUDGMENT DESPITE THE FACT THAT THE JULY 20, 1998 AFFIDAVIT OF CHARLES SCHAEFER, CPCU AND THE JULY 21, 1998 AFFIDAVIT OF ROD CRANE AT THE VERY LEAST CREATE AN ISSUE OF FACT FOR THE JURY TO DECIDE WHETHER COREGIS' DENIAL OF COVERAGE IN THIS CASE CONSTITUTES BAD FAITH.
 IV. THE TRIAL COURT ERRED WHEN IT SUSTAINED COREGIS' MOTION FOR SUMMARY JUDGMENT AFTER CORRECTLY DETERMINING THAT THE JULY 20, 1998 AFFIDAVIT OF CHARLES SCHAEFER, CPCU, STATED FACTS AND OPINIONS THAT ARE RELEVANT, PROBATIVE AND ADMISSIBLE.
Coregis cross-appeals, assigning a single error:
 THE COURT OF COMMON PLEAS ERRED WHEN IT DENIED CROSS-APPELLANT'S MOTION TO STRIKE THE AFFIDAVIT OF CHARLES D. SCHAEFER, SUBMITTED IN CONNECTION WITH THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT.
MedFlight's first, second, and third assignments of error are interrelated and will be addressed jointly. In essence, MedFlight's assignments of error resolve to the following issues: (1) whether summary judgment in favor of Coregis was inappropriate because Coregis was required by the terms of the insurance contract to cover MedFlight with respect to Asp's claim, (2) whether MedFlight's motion for summary judgment should have been granted because no genuine issues of fact exist concerning coverage of Asp's claim, and (3) whether Coregis' failure to provide coverage constituted bad faith.
Appellate review of a trial court's decision granting summary judgment is de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. A motion for summary judgment requires that the evidence be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the nonmoving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317, approved and followed).
When confronted with an insurance contract, a court applies the clear and unambiguous terms of the contract, as written, without judicial interpretation. Mueller v. Taylor Rental Ctr. (1995), 106 Ohio App.3d 806,809, citing Bright v. Ohio Cas. Ins. Co. (C.A.6, 1971), 444 F.2d 1341,1343; Karabin v. State Auto Mut. Ins. Co. (1984), 10 Ohio St.3d 163, limited on other grounds, Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500, 507. An insurance contract should be read as a whole and each word given its appropriate meaning. United States v. A.C. Strip (C.A.6, 1989), 868 F.2d 181, 185. If a court determines that the terms of the contract are ambiguous, then it should construe the terms in favor of the insured. Id; King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208; Faruque v. Provident Life Acc. Ins. Co. (1987), 31 Ohio St.3d 34.
MedFlight's policy with Coregis is a claims-made policy. Under a claims-made policy, coverage exists only when the insured presents a claim to the insurer within the policy period, or an extended period as allowed by the policy. See Mueller, supra, at 810, citing A.C. Strip, supra. "The existence of a cut-off date is integral to a claims-made policy, as it is `a distinct characteristic of such a policy that directly relates to rate setting.'" Checkrite Ltd., Inc. v. Illinois Nat. Ins. Co. (S.D.N.Y. 2000), 95 F. Supp.2d 180, 191-192, quoting Rochwarger v. Nat'l Union of Fire Ins. Co. of Pittsburgh, Pa. (1993), 595 N.Y.S.2d 459. While the typical "occurrence" policy is triggered by the event that gave rise to the claim, a claims-made policy is triggered by the reporting of a claim. Mueller, supra, at 810, citing A.C. Strip, supra.
Consistent with the typical claims-made policy, MedFlight's policy with Coregis states in the "Coverage" section that coverage applies only if the "* * * CLAIM is first made during the POLICY PERIOD and written notice of said CLAIM is received by the Company no later than sixty (60) days after the expiration date of the POLICY PERIOD." As relevant here, under section B of the "Declarations" page the policy period for one of the contracts ran from April 3, 1996 to April 3, 1997; in the subsequent contract, the policy period ran from April 3, 1997 to April 3, 1998.
Despite the definitive dates declared in the policy's "Declarations" page, MedFlight, relying on Helberg v. Natl. Union Fire Ins. Co. (1995),102 Ohio App.3d 679, contends the "policy period" extended from April 3, 1995, the initiation date of its first insurance contract with Coregis, to April 3, 1999, the expiration date of its last policy with Coregis. MedFlight further notes the following language from its policy with Coregis:
VII. DISCOVERY PERIOD
 If the Company shall cancel or refuse to renew this policy, or the ENTITY or INSURED cancels or does not renew this policy, the ENTITY or the INSUREDS shall have the right, upon payment of an additional premium of 75% of the annual premium hereunder, to an extension of cover granted by this policy in respect of any CLAIM or CLAIMS which may be made against the INSUREDS during the period of twelve (12) calendar months following the date of such cancellation or nonrenewal, but only in respect of any WRONGFUL ACT which occurred before the date of such cancellation or nonrenewal * * *. (Emphasis sic.)
In Helberg, the "policy period" ran from December 11, 1990 to December 11, 1991. The insured became aware of a claim against him on October 21, 1991, but did not report the claim to the insurer until January 21, 1992. Section I of the policy in Helberg stated coverage was available "for any claim * * * first made against the insured and reported to the Company during the policy period." Id. at 680-681. Under that language, coverage was not available to the insured.
The "Exclusion" section in the Helberg policy, however, stated coverage applies "to any claim arising out of any acts or omissions occurring prior to the effective date of the first policy issued to the named insured by this Company and continuously renewed thereafter if any insured on such date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit." (Emphasis sic.) Id. at 682. Noting the "continuously renewed thereafter" language, the court concluded "the parties expected the coverage to be continuous if the policy was renewed at each successive policy expiration." Id. Because Helberg had continuously renewed the insurance policy, the court, noting the "continuously renewed thereafter" clause, determined the contract was ambiguous, construed it in favor of the insured, and found timely notice. Id.
Unlike the contract at issue in Helberg, the Coregis policy does not contain a "continuously renewed thereafter" clause. Checkrite, supra (noting that "most courts that have confronted it have concluded that a renewal does not extend the reporting period for claims made during the earlier policy period. * * * CheckRite cites only one case to the contrary, from the appellate court of Ohio [Helberg], and even that case is distinguishable based on the language of the policy before that court"). (Citations omitted.) Id. at 194.
Alternatively, MedFlight contends, pursuant to the discovery period language noted above, that the option of purchasing an extended reporting period if the policy is cancelled or non-renewed means that an extended reporting period need not be purchased if the policy is renewed, as an extended reporting period is inherent in the renewal. As Checkrite noted, language like that contained in the discovery period clause does not speak to what happens if the policy is renewed, and thus is inapplicable here. Moreover, the provision is reasonable when interpreted according to its plain language, in that it can prevent a gap in coverage in the switch to a different claims-made policy or an occurrence policy for a company that does not renew. Id.
In an attempt to overcome the foregoing, MedFlight notes that the policy number remained the same every year, and thus it contends a new policy was never issued. MedFlight further observes language in the subsequent policy that it is a "renewal" and a "supplement." Despite that language, the critical distinction remains: without a statement in the contract that a renewal operates as an extension of coverage, merely renewing a claims-made policy does not extend the "policy period" in the contract.
Focusing on the definition of "claim" under the policy, MedFlight contends that even if it did not have a continuous policy with Coregis, it made its claim within the period prescribed by the policy. Specifically, it asserts it was served with Asp's complaint on July 3, 1997, and notified Coregis on August 5, 1997. Coregis contends, and the trial court agreed, that Kessler's March 1997 letter constituted a "claim" as defined in MedFlight's policy, rendering the claim first made during the April 1996 through April 1997 policy.
Both the 1996-1997, and 1997-1998 policies define a "claim" in section IV "Definitions" as "any demand made upon the INSURED for monetary damages, whether formal or informal, written or oral, as a result of a WRONGFUL ACT." After alleging MedFlight sexually discriminated against Asp, the Kessler letter stated:
 Although the law provides for monetary remedies in circumstances such as these, it is our view that litigation will not serve either party particularly well. If MedFlight cannot or will not employ our client in the role of "Education Coordinator" or Clinical Nurse Specialist, monetary compensation will have to suffice if litigation is to be avoided. Should MedFlight elect this route, we are authorized to enter into a settlement agreement in exchange for the sum of Two Hundred Thousand Dollars ($200,000.00), along with other non-monetary items which we can describe later.
Under the policy definition of "claim," the Kessler letter was a claim: it demanded from the insured, either in re-employment or monetary damages. Moreover, sex discrimination undisputedly constitutes a "wrongful act" as that term is defined in section IV (H) of the insurance contract. While the Kessler letter was not addressed to MedFlight, but to Ed Cotter, Vice President of General Services at Riverside Methodist Hospital and Gerald J. Maier, Associate Executive Director of Network Services at Ohio State University Hospitals, MedFlight does not dispute that it was aware of the Kessler letter and its contents on or about March 27, 1997.
Given the definition of "claim" contained in section IV, to trigger coverage MedFlight was required to inform Coregis of the Kessler letter no later than sixty days after the expiration of the policy period. MedFlight received the claim or became aware of the potential claim on March 27, 1997, a date falling within the policy period of April 3, 1996 to April 3, 1997. Consequently, to preserve coverage MedFlight was required to inform Coregis no later than June 2, 1997. MedFlight failed to inform Coregis of the Kessler letter until February 1998. Similarly, even if MedFlight's notifying Coregis of the filed complaint, which incorporated the sex discrimination claim, could be deemed notice of the claim presented in the Kessler letter it, too, was after June 2, 1997. Consequently, no coverage is available.
For the foregoing reasons, MedFlight's first and second assignments of error are overruled. Similarly, MedFlight's third assignment of error, which alleged Coregis acted in bad faith in denying coverage, is necessarily overruled because coverage was not available to MedFlight as a matter of law.
MedFlight's fourth assignment of error, and Coregis' sole assignment of error on cross-appeal, are substantially similar and also will be addressed jointly. MedFlight contends the trial court erred in granting summary judgment to Coregis because the court found Charles Schaefer's affidavit stated facts and opinions that are relevant, probative and admissible, and which, taken as true, preclude a finding for Coregis. Coregis contends the trial court erred by denying its motion to strike Schaefer's affidavit.
The affidavit offered an opinion on the existence of coverage under the insurance contract between MedFlight and Coregis. As such, it addressed a question of law properly decided by a court. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321. Although the trial court improperly considered the affidavit, Coregis suffered no prejudice because the trial court ultimately reached the proper resolution of the coverage issue. Given the irrelevance of the affidavit, MedFlight's fourth assignment of error is overruled, and Coregis' single assignment of error on cross-appeal is overruled because Coregis was not prejudiced.
Having overruled MedFlight's four assignments of error, as well as Coregis' single assignment of error on cross-appeal, we affirm the judgment of the trial court.
 ______________________ BRYANT, P.J.
DESHLER, J., concurs. KENNEDY, J., concurs in judgment only.