JOURNAL ENTRY AND OPINION
{¶ 1} When a plaintiff receives a judgment in a civil action, and the judgment debtor has liability insurance, the plaintiff is entitled, as judgment creditor, to have the remaining limit of liability insurance applied to the satisfaction of that judgment. R.C. 3920.06(A)(1). If the insurer refuses to pay under the policy, the judgment creditor may file a supplemental complaint and proceed against the insurer "in the same manner as the original civil action against the judgment debtor." R.C.3929.06(A)(2). In doing so, the judgment creditor "steps into the shoes" of the judgment debtor, and the insurance company has the right to assert in the supplemental action any defenses or rights it has that may be enforced against the insured. R.C.3929.06(C)(1). The issue in this appeal is whether the judgment creditor gave proper notice of the underlying suit to the insurance company.
 {¶ 2} The parties filed cross-motions for summary judgment. In doing so, they expressly acknowledged the absence of any genuine issues of material fact as a predicate for judgment under Civ.R. 56. We address the issues as matters of law.
 {¶ 3} Plaintiff-judgment creditor Kenneth Sesko worked for defendant-judgment debtor Hutchins Caw, Inc. During his employment, Sesko participated in a long-term disability plan which would pay him 60 percent of his salary in the event he became totally disabled. It appears that Hutchins deducted money from Sesko's salary as his contribution to the plan, but through negligence did not pay the premium on the disability policy. When Sesko became totally disabled, Hutchins had no long-term insurance. Sesko lost out on $180,000 in benefits and suffered losses of $70,000 when liquidating personal assets.
 {¶ 4} Sesko brought suit against Hutchins alleging that Hutchins negligently failed to fund the disability plan. Hutchins did not answer the complaint or otherwise appear in the action. The court entered a default judgment for Sesko in the amount of $270,729.13, plus statutory interest, these damages being the result of Hutchins' failure to fund the disability plan.[1]
 {¶ 5} Hutchins filed a motion for relief from judgment pursuant to Civ.R. 60(B). Its president represented that he did not receive notice of Sesko's action. He further represented that Hutchins purchased the business in 2001. It did not continue the same disability insurance program but offered a different insurance plan. This new plan allegedly rejected Sesko's application for disability coverage. He did acknowledge, however, that Hutchins erroneously continued to make deductions from Sesko's salary. The court denied the motion for relief from judgment and Hutchins did not appeal.
 {¶ 6} Sesko then filed this supplemental action against supplemental defendant Vigilant Insurance Company, the company providing long-term disability insurance to Hutchins at the time of Sesko's disability.
 {¶ 7} Vigilant filed a motion for summary judgment in which it maintained that (1) Sesko's claims were not made for the first time during the defined policy period, (2) it did not receive timely notice of the underlying action as required by its policy and that this failure constituted a noncompliance with the terms of the policy, and (3) the policy specifically excluded from coverage loss on account of any claim based on disability benefits.
 {¶ 8} Sesko's motion for summary judgment argued that Vigilant's alleged lack of timely notice was nonprejudicial. He also maintained that public policy favored payment of the benefits. The court granted summary judgment to Vigilant without opinion.
 I {¶ 9} Civ.R. 56(C) states that the court shall not grant summary judgment unless, having construed the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. We review summary judgments de novo, with no deference to the court. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27.
 {¶ 10} Insurance policies are contracts, and we construe them according to established laws of contract construction without giving any deference to the trial court's interpretation.Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108, 1995-Ohio-214; Alexander v. BuckeyePipeline Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Contract terms are to be given their plain and ordinary meaning. Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 167-168. If provisions are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured." King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
 II {¶ 11} Section 32 of the Vigilant policy states in part.
 {¶ 12} "No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy."
 {¶ 13} Section 2 of the policy states:
 {¶ 14} "The Company shall pay on behalf of an Insured allLoss which Insured becomes legally obligated to pay on account of any Fiduciary Claim first made against suchInsured during the Policy Period * * *." (Emphasis sic.).
 {¶ 15} The Vigilant policy is a "claims made" policy. This means that it provides coverage for claims made within the policy period, regardless of when the occurrence giving rise to the claim arose. This is in contrast to an "occurrence" policy in which coverage exists only for occurrences that happen during the policy period. The "policy period" is defined on the declarations page as April 22, 2003 to April 22, 2004. A "claim" is defined, in this context, as a "fiduciary" claim which constitutes a "written demand for monetary damages." Hence, any written demand for monetary damages made within the policy period is considered a "claim" under the policy.
 {¶ 16} Sesko's attorney wrote Hutchins a letter dated February 18, 2002. In that letter, the attorney asked Hutchins to provide her with documentation on Sesko's short and long-term disability benefits. The attorney also stated, "[w]hile this matter is being reviewed, please note that Mr. Sesko does hereby give notice that he is applying for long-term disability benefits * * *."
 {¶ 17} We agree with Sesko that this letter did not assert a "claim" as that term is defined in the policy. The "notice" referred to in the letter did not encompass any "written demand for monetary damages." It simply placed Hutchins on notice that Sesko was seeking short and long-term disability benefits. The policy admits no other reasonable interpretation.
 {¶ 18} Our conclusion is buttressed by Vigilant's claim examiner, who testified in deposition that Vigilant first received notice of the claim on December 2, 2003, within the policy period. The claims examiner said that he received on that date a telefax which included the amended complaint filed in the underlying action. This amended complaint conformed to the terms of the policy since it included a demand for monetary damages. Unlike the notice letter which asserted a claim for benefits with no demand for monetary damages, the December 2, 2003 telefax included a complaint which did make a specific demand for monetary damages. We therefore conclude that Sesko did make a claim within the policy period.
 III {¶ 19} Section 29 of the policy states that any insured, "shall, as a condition precedent to exercising their rights under this policy, give to the Company written notice as soon as practicable of any Claim." (Emphasis sic.)
 {¶ 20} In Ormet Primary Aluminum Corp. v. Employers Ins. ofWassau, 88 Ohio St.3d 292, 302-303, 2000-Ohio-330, the supreme court stated:
 {¶ 21} "Notice provisions in insurance contracts serve many purposes. Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. Ruby v. Midwestern Indemn. Co.
(1988), 40 Ohio St.3d 159, 161, 532 N.E.2d 730, 732. In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. See Inre Texas E. Transm. Corp. PCB Contamination Ins. CoverageLitigation (E.D.Pa. 1992), 870 F.Supp. 1293. It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims. See Am. Ins. Co. v.Fairchild Industries, Inc. (E.D.N.Y. 1994), 852 F.Supp. 1173,1179. Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims."
 {¶ 22} When a denial of benefits is premised on a breach of the notice provisions of a policy, "* * * the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." Ferrando v.Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217, at paragraph two of the syllabus. Although Ferrando dealt with notice under an uninsured motorists policy of insurance, the legal principle employed in that case is the same as that raised here.
 {¶ 23} Vigilant argued that its December 2003 notice of the claim came after the court entered a default judgment in Sesko's favor. We have no doubt that Sesko's failure to give timely notice to Vigilant of his action prejudiced Vigilant. By the time Vigilant learned of Sesko's action, default judgment had been entered. The time to appeal had passed, leaving Vigilant with only one option: filing a motion for relief from judgment on Hutchins' behalf.
 {¶ 24} Sesko counters this presumption of prejudice by pointing to the court's refusal to grant Hutchins relief from judgment. He maintains that the court's denial of relief from judgment showed that Hutchins did not have any viable defenses.
 {¶ 25} We reject Sesko's argument. The court did not specify any reason for denying the motion for relief from judgment, so we have no way of determining the basis for the court's ruling. It would be irresponsible for us to assume that the court concluded there were no viable or adequate defenses to the default judgment.
 {¶ 26} Decisions either granting or denying relief from judgment are vested solely within the court's discretion. We cannot review such decisions to determine the correctness of the judgments from which relief is sought. Fifth Third Bank v.Labate, Stark App. No. 2005CA00180, 2006-Ohio-4239, at ¶ 31. That being the case, a Civ.R. 60(B) motion for relief from judgment is a poor substitute for mounting an actual defense at trial. The grounds for seeking relief from judgment are limited, and cannot be taken as a comment on the likelihood of success that a party might have. The term "meritorious defense" as used in the rule "is not synonymous with a successful defense." Cityof Columbus, Div. of Income Tax v. Flex Tech Professional Srvcs.,Inc., Franklin App. No. 04AP-417, 2004-Ohio-6255, at ¶ 14. Even though the court did not think much of Vigilant's defenses as asserted in the motion for relief from judgment, that says nothing about how viable Vigilant's defenses would have been at trial.
 III {¶ 27} We are sensitive to Sesko's position — he made his contribution for long-term disability benefits and, through no fault of his own, was denied those benefits. The fault here does not lie with Vigilant, but rather with Hutchins, which negligently failed to pay the insurance premiums to Vigilant. Hutchins is judgment-proof, and Sesko predictably looks to Vigilant and its deep pockets. But the depth of a party's pockets has no bearing on the legal duty to indemnify. The relationship between the parties is defined purely by contract, and no court can impose legal duties that the parties did not specifically agree to. The contract here provides for notice as soon as practicable, and we conclude that no reasonable person could find that Vigilant received such notice when it did not learn of this action until after a default judgment had been entered. The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Gallagher, J., concur.
[1] Curiously, the record shows that the court granted the default judgment in September 2003, almost six months before Sesko filed his March 2004 motion seeking the same. Sua sponte default judgments are unavailable at law, as Civ.R. 55(A) states that "the party entitled to judgment shall apply to the court for judgment." See Bowersmith v. United Parcel Service, Inc.,166 Ohio App.3d 22, 2006-Ohio-1417, at ¶ 18. While Sesko did give Hutchins notice of a default hearing, a check of the court's docket at that time would not have shown any outstanding motion. In any event, Hutchins did not argue any of this in its motion for relief from judgment, so it has been waived.