[Cite as *ISCO Industries, Inc. v. Great Am. Ins. Co.*, 2019-Ohio-4852.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ISCO INDUSTRIES, INC., | : | APPEAL NO. C-180636 |
| | | TRIAL NO. A-1803505 |
| and | : | |
| ISCO CANADA, INC., | : | |
| | | *O P I N I O N.* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| GREAT AMERICAN INSURANCE CO., | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 27, 2019

*Taft Stettinius & Hollister LLP*, *Mark T. Hayden* and *Aaron M. Herzig, Reed Smith LLP*, *John D. Shugrue, Kevin B. Dreher* and *Bradley H. Dlatt,* for Plaintiffs-Appellants,

*Bailey Cavalieri LLC, Michael R. Goodstein* and *Mark A. Glumac,* for Defendant-Appellee.

**WINKLER, Judge.**

{¶1} Plaintiffs-appellants ISCO Industries, Inc., and ISCO Canada, Inc., (collectively "ISCO") appeal the dismissal of their complaint against their insurer, defendant-appellee Great American Insurance Company ("Great American"), arising from Great American's refusal to provide coverage with respect to a lawsuit and settlement between ISCO and a third-party Canadian corporation. For the reasons that follow, we affirm the trial court's dismissal.

## Factual Background and Procedural Posture

{¶2} According to ISCO's complaint, on January 31, 2014, ISCO received a letter from outside counsel for Wolseley Canada, Inc., ("Wolseley Canada"). The letter informed ISCO that those former Wolseley Canada employees who had been or were about to be hired by ISCO owed post-employment obligations to Wolseley Canada. The letter requested that ISCO acknowledge those obligations. On February 25, 2014, Wolseley Canada filed a lawsuit in Canada against ISCO and several of its individual employees. Almost a year and a half later, on August 20, 2015, ISCO notified Great American of the Wolseley Canada lawsuit.

{¶3} ISCO had entered into a claims-made insurance agreement with Great American for directors and officers and entity coverage, for a period covering March 19, 2013, to March 19, 2014 (the "policy"). ISCO renewed the policy twice for the periods covering March 19, 2014, to March 19, 2015, and March 19, 2015, to March 19, 2016.

{¶4} The policy obligates Great American to pay on behalf of ISCO "all Loss which [ISCO] shall be legally obligated to pay as a result of a Claim first made against [ISCO] during the Policy Period or the Discovery Period for a Wrongful Act." The

2

policy also includes ISCO employees as insureds. The policy defines "Claim" to include "(1) a written demand for monetary or non-monetary relief made against any Insured * * * [and] (2) (a) a civil * * * proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the filing of a complaint or similar pleading." The policy defines "Loss" to include "settlement" and "Cost of defense."

{¶5} The policy contains a "Notice Provision," which provides:

With respect to any Liability Claim for which coverage is provided under any Liability Coverage Part, the Insureds shall, as a condition precedent to their rights under this Policy, give the Insurer notice in writing of such Liability Claim:

(1) as defined in subparagraph (1) of the definition of Claim in the applicable Liability Coverage Part, which is made during the Policy Period. Such notice shall be given prior to the end of the Policy Period; or

(2) as defined in subparagraph (2) of the definition of Claim in the applicable Liability Coverage Part, which is made during the Policy Period. Such notice shall be given as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility has knowledge of the Claim, and in no event later than ninety (90) days after the end of the Policy Period.

The Insureds failure to report a Claim pursuant to (1) above shall not negate the right to report a Claim pursuant to (2) above under this Policy or any renewal thereof.

3

{¶6} Great American denied coverage to ISCO on the basis that it had failed to timely notify Great American of the Wolseley Canada lawsuit.

{¶7} ISCO settled the Wolseley Canada lawsuit on February 15, 2018. ISCO then filed the instant complaint against Great American for breach of contract. ISCO alleged that Great American had breached its duty to defend ISCO in the Wolseley Canada lawsuit, and that Great American had breached its duty to indemnify ISCO, including the amount that ISCO had paid to settle the Wolseley Canada lawsuit.

{¶8} Great American moved to dismiss ISCO's complaint on the basis that ISCO had failed to timely notify Great American as required by the policy. Great American argued that the filing of the Wolseley Canada lawsuit was a "claim" under the original policy period, and under the policy's notice provision, ISCO was required to give notice to Great American regarding the Wolseley Canada lawsuit no later than 90 days after the expiration of the original policy period, or June 17, 2014. Because ISCO did not provide Great American with notice of the Wolseley Canada lawsuit until August 20, 2015, Great American argued that it had no duty to provide coverage under the policy.

{¶9} The trial court granted Great American's motion to dismiss. This appeal by ISCO ensued.

### Standard of Review

{¶10} ISCO raises four assignments of error challenging the trial court's dismissal of its complaint under Civ.R. 12(B)(6). This court reviews a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6) de novo. *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382. Under Civ.R. 12(B)(6), the factual allegations must be taken as true, and all

reasonable inferences drawn in favor of the nonmoving party. *Id.* "To grant the motion, 'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.' " *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12.

## Choice of Law

{¶11} Before delving into the substance of ISCO's complaint, we must determine whether Kentucky or Ohio law applies to this dispute. Great American contends that Kentucky law applies because Kentucky has the "most significant relationship" to the dispute between these parties.

{¶12} The "most significant relationship" test comes from *Gries Sports Ents., Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984), and Restatement of the Law 2d, Conflict of Laws, Section 188 (1971). The most-significant-relationship test provides that in the absence of an effective choice of law by the parties to a contract, the state with the most significant relationship to the transaction and the parties should govern. Restatement, Section 188. In determining which state has the most significant relationship, courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.*

{¶13} Great American argues that Kentucky has the most significant relationship to this insurance-coverage dispute. ISCO Industries is a Kentucky corporation with a principal place of business in Kentucky, and the policy was issued in Kentucky.

5

{¶14} The party asserting that a foreign law applies has the burden to demonstrate that a conflict of laws exists between the foreign law and the law of the forum. *Cross v. Carnes*, 132 Ohio App.3d 157, 168, 724 N.E.2d 828 (11th Dist.1998). Where no conflict of laws exists, the law of the forum controls. *Id.* Therefore, " '[a] court must conduct conflict of laws analysis only if there is an actual conflict between local law and the law of another jurisdiction.' " *Miami Valley Mobile Health Serv., Inc. v. ExamOne Worldwide, Inc.*, 852 F.Supp.2d 925, 937 (S.D.Ohio 2012), quoting *Andersons, Inc. v. Consol, Inc.*, 185 F.Supp.2d 833, 836 (N.D.Ohio 2001). "[I]f two jurisdictions apply the same law, or would reach the same result applying their respective laws, a choice of law determination is unnecessary because there is no conflict, and the laws of the forum state apply." *Wendy's Internatl., Inc. v. Illinois Union Ins. Co.*, S.D.Ohio No. 2:05-cv-803, 2007 WL 710242, *6 (Mar. 6, 2007), citing *Mecanique C.N.C., Inc. v. Durr Environmental, Inc.*, 304 F.Supp.2d 971, 957 (S.D.Ohio 2004).

{¶15} In *Wendy's*, the court refused to engage in a choice-of-law analysis in an insurance-coverage dispute. *Wendy's Internatl., Inc.*, at *6. In that case, Wendy's sued its insurer following the insurer's failure to provide coverage with respect to an arbitration and settlement between Wendy's and a California corporation. The insurer refused to provide coverage because Wendy's had not reported the claim during the policy period. As to whether Ohio, the law of the forum, or California law applied to the coverage issue, Wendy's argued that California law applied, because the dispute with the California corporation over which Wendy's sought coverage had occurred in California. The court declined to engage in a choice-of-law analysis, stating:

6

Here, Plaintiffs, seeking to apply California law, have the burden of showing that California law is different than Ohio law. Not only have Plaintiffs not pointed to any material differences between California law and Ohio law on this issue, Plaintiffs argue that both California and Ohio have adopted the "notice-prejudice" rule bearing on the issue of whether courts must inquire as to whether an insurer was prejudiced by late or untimely notice before determining that coverage is precluded on such basis. Because Plaintiffs have failed to show how California law differs from Ohio law, and because the Court has not found any material differences in the states' respective laws, the Court will not engage in a choice-of-law analysis and will apply the laws of the forum state, Ohio, to this dispute.

*Id.* at *5-6.

{¶16} Great American contends that ISCO is not entitled to coverage under either Ohio or Kentucky law, and Great American has not shown that the laws of Kentucky or Ohio differ regarding whether late notice of a claim vitiates coverage. Because Great American has not shown that a conflict of laws exists between Ohio and Kentucky, we will apply Ohio law, as did the trial court, to determine whether ISCO provided timely notice of the Wolseley Canada claim.

**Timely Notice of a Claim under the Policy**

{¶17} In its first assignment of error, ISCO argues that the trial court erred in holding that ISCO had failed to timely notify Great American under the policy, because the trial court failed to follow a decision from Ohio's Sixth District Court of Appeals, *Helberg v. Natl. Union Fire Ins. Co.*, 102 Ohio App.3d 679, 657 N.E.2d 832

7

(6th Dist.1995), as well as a case that relied on *Helberg*: *Professionals Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., LPA*, S.D.Ohio No. 2:06-CV-240, 2009 WL 4281263 (Nov. 24, 2009).

{¶18} Before considering whether *Helberg* applies to the notice provision in the policy, we must look first to the language of the policy itself. The policy requires that ISCO give notice of a civil proceeding against it "as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility has knowledge of the Claim, and in no event later than ninety (90) days after the end of the Policy Period." Here, the parties do not dispute that the filing of the Wolseley Canada lawsuit was a civil proceeding, and that ISCO failed to notify Great American of the Wolseley Canada lawsuit within 90 days after the end of the policy period. Nevertheless, ISCO argues that coverage exists under *Helberg*, because ISCO renewed the policy.

{¶19} In *Helberg*, the insured's malpractice insurance policy provided coverage for acts or omissions that occurred prior to the end of the policy period, if the insured reported the claim during the policy period. The policy contained an exclusion section, which provided coverage with respect to "any claim arising out of any acts or omissions occurring prior to the effective date of the first policy issued to the named insured by this Company and continuously renewed thereafter if any insured on such date knew or could have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit."

{¶20} After the insured's original policy expired, the insured purchased a renewal. The insured reported a malpractice claim to his insurer almost six weeks after the original policy had expired.

8

{¶21} The *Helberg* court determined that the policy language was ambiguous regarding when a claim must be reported, and that the ambiguity should be construed in favor of the insured. The court noted that despite the language in the policy requiring that the insured report a claim during the policy period, the renewal language in the exclusion section indicated that the parties expected continuous coverage upon policy renewal. The court determined that "[i]n the present case, there was no cancellation of coverage, nor did the insured change insurance carriers. The insured merely renewed his claims-made policy. Such an event should not precipitate a trap wherein claims spanning the renewal are denied." *Helberg*, 102 Ohio App.3d at 682, 657 N.E.2d 832. Therefore, the *Helberg* court reversed summary judgment in favor of the insurer on its late-notice defense.

{¶22} Following *Helberg*, in *Professionals Direct*, an insurer moved for summary judgment on the basis that an insured had failed to timely report a malpractice claim. The policy indicated that a claim is made "when you first receive information or have knowledge of specific circumstances involving a particular person or entity which could reasonably be expected to result in a claim." *Professionals Direct Ins.*, S.D.Ohio No. 2:06-CV-240, 2009 WL 4281263, at *10. The court determined that the "reasonably be expected" language was ambiguous, and that whether the insured had notice of the claim was a factual issue. The court then reasoned that *Helberg* provided an independent basis upon which to deny summary judgment to the insurer. The court determined that *Helberg's* policy concern with a " 'trap wherein claims spanning the renewal are denied' " applied in that case with equal force. *Id.* at *20, quoting *Helberg*, 102 Ohio App.3d at 682, 657 N.E.2d 832. The court analyzed *Helberg* and determined that it stood for the

9

proposition that so long as a policy is renewed and an insured provides notice of a claim within a reasonable time, coverage exists even if the notice of the claim was not timely.

{¶23} The *Helberg* and *Professionals Direct* courts determined that because the notice provisions in the policies were ambiguous, the insureds need only have provided notice to the insurers within a reasonable time. The courts were also concerned with the insureds being caught in a "trap" where a claim made at or near the end of a policy period would effectively eliminate the insured's ability to report the claim within the policy period. In this case, the notice provision in the policy is unambiguous. The notice provision in this case also eliminates the "trap" concern in *Helberg*, and it provides a 90-day cushion after the policy ends in which ISCO can provide notice. Additionally, in *Professionals Direct*, the court determined that the ambiguous language in the policy created a factual issue as to when a claim had been made. Here, no factual issue exists as to when a claim was made, because the parties agree that the filing of the Wolseley Canada lawsuit constituted a claim under the policy. Therefore, *Helberg* and *Professionals Direct* are distinguishable.

{¶24} Other courts have also found *Helberg* distinguishable in cases where a claim must be made and reported within a specific timeframe. In *US HF Cellular Comm. v. Scottsdale Ins. Co.*, S.D.Ohio No. 2:17-cv-261, 2018 WL 2938388 (June 12, 2018), the court considered whether the insureds had timely reported a claim to their insurer under an executive policy similar to the one at issue in this case. The policy provided that notice of a claim must be made to the insurer as soon as practicable, but in no event later than 60 days after the end of the policy period. The parties did not dispute that a claim was made when the insureds were sued, and that the

insureds did not report the claim until four months after the 60-day reporting deadline. Although the court applied California law to the coverage dispute, the court considered the insureds argument that the analysis in *Helberg* applied to provide coverage. The insureds argued that because the policy had been renewed, coverage existed even though the claim had been made during a second policy period, but not reported until the third policy period. The court determined that *Helberg* was distinguishable because the insured in *Helberg* did not have a 60-day extension under the policy in which to report claims, like the insureds in the case before it.

{¶25} The court in *US HF Cellular* applied the plain language of the policy in determining that the insured's claim coverage did not extend past the 60-day reporting deadline. "It is well-established in Ohio, and indeed universally, that contracts, including insurance policies, 'are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " (Citations omitted.) *Telxon Corp. v. Fed. Ins. Co.*, 309 F.3d 386, 391 (6th Cir.2002), quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974).

{¶26} Here, the plain language of the policy required ISCO to report a claim no later than 90 days after the end of the policy period. ISCO's argument that *Helberg* applies such that its policy renewal creates an expectation of continuous and seamless coverage, so long as ISCO reported its claim in a reasonable time, is not supported by the plain language of the policy.

{¶27} We overrule the first assignment of error.

**The Notice-Prejudice Rule**

{¶28} In its second assignment of error, ISCO contends that the trial court erred in granting Great American's motion to dismiss, because the trial court incorrectly held that the "notice-prejudice rule" was inapplicable. *See Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927. ISCO contends that the notice-prejudice rule applies, so that even if ISCO did not timely notify Great American of a claim under the policy, Great American must still provide coverage if it has not been prejudiced by the late notice.

{¶29} In *Ferrando*, the Ohio Supreme Court held that when an insurer's denial of underinsured motorist ("UIM") coverage is based upon an insured's failure to comply with a prompt-notice provision, the insurer is not required to provide coverage, so long as the insurer has been prejudiced by the insured's unreasonable delay in providing notice. The UIM policy in *Ferrando* required "prompt notice" to the insurer. The *Ferrando* court reasoned that prompt notice meant notice " 'within a reasonable time in light of all the surrounding facts and circumstances.' " *Id.* at ¶ 90, quoting *Ruby v. Midwestern Indemn. Co.*, 40 Ohio St.3d 159, 161, 532 N.E.2d 730 (1988). Even if an insured did not provide notice within a reasonable time under an UIM policy, then a court must determine whether the insurer was prejudiced. *Ferrando* at ¶ 90.

{¶30} The policy here does not require "prompt notice" of a claim, and instead requires notice within 90 days after the end of the policy period. The policy here is also a directors and officers liability coverage policy, not a UIM policy. Therefore, *Ferrando* is distinguishable. ISCO cites several cases, however, that purportedly extend *Ferrando* beyond its facts. ISCO cites to *Sesko v. Caw*, 8th Dist.

12

Cuyahoga No. 87359, 2006-Ohio-5434, in which a judgment creditor sought to recover from a judgment debtor's insurance company. The policy at issue in *Sesko* required that the notice of a claim be made "as soon as practicable." *Id.* at ¶ 19. The court determined that the issue of whether the insurance company had been timely notified of a claim was similar to the notice issue in *Ferrando*. Applying the notice-prejudice rule, the court reasoned that the insurance company had been prejudiced.

{¶31} The requirement to provide notice "as soon as practicable" at issue in *Sesko* is similar to the requirement of providing "prompt notice," in that neither requirement specifies notice during a set timeframe. *See Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 725 N.E.2d 646 (2000), syllabus ("A provision in an insurance policy requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable time in light of all the surrounding facts and circumstances."). The policy here requires notice to Great American within a set timeframe—no later than 90 days after the end of the policy period.

{¶32} ISCO also cites to *Vecchio v. Montgomery Cty.*, 8th Dist. Cuyahoga No. 20467, 2005-Ohio-313. In *Vecchio*, an employee brought suit against his employer's automobile insurer seeking UIM coverage after the employee had been injured in a car accident during the scope of his employment. The employer's automobile-insurance policy provided that notice of a claim must be made to the insurer within 30 days after an accident. The court reasoned that the plaintiff-employee was a third-party beneficiary under his employer's insurance policy, and as a third party, he did not have actual notice of the 30-day reporting requirement. The court also reasoned that *Ferrando's* reasonableness test applies to UIM coverage, and thus a genuine issue of material fact existed as to whether the plaintiff acted

reasonably in failing to give notice within 30 days. Unlike *Vecchio*, this case does not involve UIM coverage, and ISCO is not a third party to the contract, so it cannot argue lack of notice of the policy terms.

{¶33} ISCO cites *McKean v. Howell*, 5th Dist. Stark No. 2004CA00041, 2005-Ohio-721, for the proposition that the notice-prejudice rule has been extended to liability-coverage cases. In *McKean*, a judgment debtor sought to recover against the tortfeasor's insurance company. The tortfeasor had never reported any loss to his insurance company. The *McKean* court held that the tortfeasor's complete failure to report the loss would not per se preclude coverage for the judgment debtor. The policy at issue in *McKean*, however, like the policy in *Ferrando*, required prompt notice.

{¶34} Federal courts applying Ohio law have held that the notice-prejudice rule in *Ferrando* is inapplicable in cases where the policy provides that notice of a claim must be given to the insurer by a certain date. *See McCarty v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.*, 699 Fed.Appx. 464 (6th Cir.2017); *Wendy's Internatl., Inc.*, S.D.Ohio No. 2:05-cv-803, 2007 WL 710242, at *9; *Certain Underwriters at Lloyds of London v. Jeff Wyler Dealer Group, Inc.*, S.D.Ohio No. C-1-05-572, 2007 WL 1989836, *8 (July 9, 2007).

{¶35} In *McCarty*, the United States Court of Appeals for the Sixth Circuit applying Ohio law rejected an argument that the notice-prejudice rule applied to the terms of a malpractice-insurance policy, which provided coverage only for claims made against the insured during the policy period, and "promptly reported" to the insurer, "but in any case no later than sixty days after the end of the policy period." *McCarty* at 468.

14

**{¶36}** The plaintiffs in *McCarty* had obtained a judgment against their former attorney for malpractice, and the plaintiffs sought to collect on their judgment against the attorney's malpractice insurer. The plaintiffs argued that their claim should be covered because the insurer was not prejudiced by their attorney's untimely reporting of their claim. The Sixth Circuit noted that the plaintiffs "appear[ed] to conflate a claims-made policy, like [the attorney's], with an occurrence-based policy." According to the court,

> [a] claims-made policy covers losses that arise during the policy period, regardless of when the events underlying the claim might have occurred. On the other hand, an occurrence-based policy covers losses resulting from events that occur during the coverage period, even though it might be long after the policy period before the events are discovered and the claim is filed.

(Internal citation omitted.) *Id.*

**{¶37}** The court further reasoned that "[b]ecause coverage in a claims-made policy is generally restricted to only claims made and reported during the policy period, an insurer need not demonstrate prejudice to deny a claim that is made outside of the policy period." *Id.*, citing *United States v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir.1989). Therefore, the court held that the plaintiffs' malpractice claim was reported too late to be covered.

**{¶38}** Prior to *McCarty*, in *Wendy's*, the United States District Court for the Southern District of Ohio determined that the notice-prejudice rule did not apply to a policy in which the notice provision required notice of a claim to the insurer "immediately, but in no event later than 60 days after the end of the Policy Period of

any Claim made against the Insured." *Wendy's Internatl., Inc.*, S.D.Ohio No. 2:05-CV-803, 2007 WL 710242, at *3. The court determined that the notice-prejudice rule from *Ferrando* was inapplicable because the policy in *Ferrando* did not require the insured to notify the insurer of any claim by a specific date, but "[r]ather the policy provided that notice of the occurrence should be provided to the insurer 'promptly.' " *Id.* at *8.

{¶39} Another court in the United States District Court for the Southern District of Ohio followed *Wendy's*, reasoning that "[a]bsent any contrary caselaw supporting the proposition that the notice-prejudice standard enunciated in *Ferrando* applies when a specific notice deadline is imposed under a policy or indicating that the Ohio Supreme Court would extend the notice-prejudice standard in this manner, the Court declines to extend *Ferrando* to the facts of this case." *Certain Underwriters at Lloyds of London*, S.D.Ohio No. C-1-05-572, 2007 WL 1989836, at *7.

{¶40} Similarly, the United States District Court for the Western District of Kentucky refused to apply the notice-prejudice rule to a policy very similar to the one at bar, which provided the insured with directors and officers and company coverage. *See C.A. Jones Mgt. Group, LLC v. Scottsdale Indemn. Co.*, W.D.Ky. No. 5:13-CV-00173-TBR-LLK, 2016 WL 3460445, *1 (June 21, 2016). The policy required written notice to the insurer of any claim as soon as practicable, but in no event later than 60 days after the end of the policy period. The court determined that the notice language was unambiguous, and that adoption of the notice-prejudice rule would effectively rewrite the parties' contract.

16

{¶**41**} Following the reasoning of these federal courts, we hold that the notice-prejudice rule does not apply to the policy here, which requires ISCO to provide notice to Great American of a civil proceeding no later than 90 days after the end of the policy period. Therefore, Great American need not demonstrate that it was prejudiced by ISCO's untimely notice of a claim in order for Great American to deny coverage.

{¶**42**} We overrule the second assignment of error.

### The Savings Clause

{¶**43**} In its third assignment of error, ISCO contends that the trial court incorrectly interpreted the notice provision in the policy, because the letters ISCO received from outside counsel for Wolseley Canada prior to its lawsuit constituted a "claim" that triggered the application of "the savings clause."

{¶**44**} The "savings clause" referred to by ISCO is bolded in the notice provision below:

> With respect to any Liability Claim for which coverage is provided under any Liability Coverage Part, the Insureds shall, as a condition precedent to their rights under this Policy, give the Insurer notice in writing of such Liability Claim:
>
> (1) as defined in subparagraph (1) of the definition of Claim in the applicable Liability Coverage Part, which is made during the Policy Period. Such notice shall be given prior to the end of the Policy Period; or
>
> (2) as defined in subparagraph (2) of the definition of Claim in the applicable Liability Coverage Part, which is made during the Policy

Period. Such notice shall be given as soon as practicable from the date the General Counsel, Risk Manager, or person with equivalent responsibility has knowledge of the Claim, and in no event later than ninety (90) days after the end of the Policy Period.

**The Insureds failure to report a Claim pursuant to (1) above shall not negate the right to report a Claim pursuant to (2) above under this Policy or any renewal thereof.**

(Emphasis added.)

{¶45} The definition of "claim" in subparagraph (1) is "a written demand for monetary or non-monetary relief made against any Insured." The definition of "claim" in subparagraph (2) is "a civil * * * proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the filing of a complaint or similar pleading."

{¶46} Therefore, reading the definitions of claim together with the "savings clause," the "savings clause" provides that if ISCO fails to report a written demand for relief, that failure will not negate ISCO's right to report a civil proceeding under the policy or any renewal of the policy.

{¶47} ISCO argues that the Wolseley Canada letters constituted written demands for relief, thereby invoking the savings clause, and that ISCO's failure to report the demand letters to Great American cannot negate its right to report the Wolseley Canada lawsuit under any later renewal period. Thus, even though the Wolseley Canada lawsuit was filed in February 2014, and the 2013-2014 policy period expired in March 2014, ISCO contends that it did not have to report the Wolseley Canada lawsuit to Great American within 90 days of the end of the 2013-

2014 policy period, as required by paragraph two of the notice provision, because of the "savings clause."

{¶48} The trial court determined that ISCO's interpretation of the "savings clause" makes the reporting requirement under paragraph two of the notice provision meaningless, and that " '[i]f one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.' " *See Helberg*, 102 Ohio App.3d at 682, 657 N.E.2d 832, quoting *Farmers Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 94 N.E. 834 (1911), paragraph six of the syllabus. We agree with the trial court's analysis.

{¶49} Moreover, the letters ISCO received from Wolseley Canada prior to the lawsuit requested that ISCO and certain employees of ISCO confirm in writing that they understood their alleged post-employment obligations to Wolseley Canada. The letters do not constitute a "demand for relief," because the Wolseley Canada plaintiffs had not yet claimed any injury.

{¶50} We determine that the "savings clause" is inapplicable to ISCO's dispute, and, as a result, we overrule the third assignment of error.

### Amendment of the Complaint

{¶51} In its fourth assignment of error, ISCO contends that the trial court erred by failing to grant its request for leave to file an amended complaint.

{¶52} Civ.R. 15(A) governs amendment of pleadings, and it provides that "[t]he court shall freely give leave when justice so requires." Even though Civ.R. 15 requires a court to freely give leave to amend in the interest of justice, "a trial court

properly refuses to grant leave to amend when amendment would be futile." *Hensley v. Durrani*, 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 14.

{**¶53**} ISCO contends that the trial court should have allowed ISCO the opportunity to amend its complaint to add more facts to show that its notice was reasonable under the circumstances, and that Great American was not prejudiced by ISCO's delay in reporting. ISCO's argument assumes that *Helberg* and *Ferrando* govern the notice issue, but, as we have determined, those cases do not apply. Therefore, an amendment to ISCO's complaint would be futile, and the trial court did not err in refusing to allow ISCO to amend its complaint. *See Great Water Capital Partners, L.L.C. v. Down-Lite Internatl., Inc.*, 1st Dist. Hamilton No. C-150015, 2015-Ohio-4877, ¶ 18.

{**¶54**} We overrule the fourth assignment of error.

### Conclusion

{**¶55**} We affirm the judgment of the trial court dismissing ISCO's complaint.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.